James P. Michaelson and Josephine H. Michaelson v. Commissioner.
Michaelson v. Commissioner
Docket No. 2613-69 SC.
United States Tax Court
T.C. Memo 1969-293; 1969 Tax Ct. Memo LEXIS 1; 28 T.C.M. (CCH) 1503; T.C.M. (RIA) 69293; December 30, 1969, Filed James P. Michaelson, pro se, 5847 Sycamore Ave., Rialto, Calif. Andrew H. Weinstein, for the respondent. IRWIN
Memorandum Findings of Fact and Opinion IRWIN, Judge: Respondent determined a deficiency of $819 in petitioners' income tax for the year 1966. The only question presented is whether certain expenditures incurred by petitioner, James P. Michaelson, while residing in an apartment in Long Beach and Huntington Beach, California, are deductible as "traveling expenses * * * while *2 away from home" within section 162 (a) (2), Internal Revenue Code of 1954. [1]
Findings of Fact The parties have stipulated certain facts which, together with the attached exhibits, are incorporated herein by this reference. Petitioners, James P. and Josephine H. Michaelson, husband and wife, filed a joint income tax return for the taxable year 1966 with the district director of internal revenue in Los Angeles, California. At the time of the filing of the petition in this case, petitioners resided in Rialto, California. James P. Michaelson [2] (hereinafter referred to as petitioner) was employed until 1964 as an engineer under the Federal Civil Service. He worked in the Rialto area, and retired from his position in 1964, rather than relocate away from his hometown of Rialto. Upon his retirement from the Federal Civil Service, petitioner actively sought employment in the field of engineering, limiting his search to the *3 Rialto area and surrounding San Bernardino County. Petitioner was unable to find a position in that geographic area because there was no need for an engineer of his background at that time. In July 1965, petitioner secured full-time employment as a quality control specialist with the Aircraft Division of Douglas Aircraft Corp. (hereinafter Douglas or Douglas Aircraft) in Long Beach, California. He decided not to accept the offer made by Douglas to reimburse him for his moving expenses from Rialto to Long Beach, preferring to maintain a house in Rialto for his wife and school-age children. Petitioner occupied an apartment owned by his sister in Long Beach while working there for Douglas. During the course of his employment in Long Beach - from July 1965 to April 1966 - petitioner expended money for travel from Rialto to Long 1504 Beach and return, utilities at his sister's apartment, and for meals. Petitioner had no other employment during the period he was employed by Douglas Aircraft in Long Beach. In April 1966, production cutbacks caused Douglas to give petitioner notice of termination. At the time petitioner was hired to work in Long Beach he had no specific agreement *4 with Douglas Aircraft that his position would terminate at a specified time. However, petitioner testified that he had intended to return to Rialto no later than June 1966. This alleged intention was never communicated to Douglas Aircraft. Petitioner was unemployed from April 1966 until July 1966, at which time he accepted a position as an engineer with the Missile and Space Systems Division of Douglas Aircraft in Huntington Beach, California. Douglas Aircraft once again offered to reimburse petitioner for moving expenses from Rialto to Huntington Beach, but petitioner declined and continued to maintain his house in Rialto for his family, while renting an apartment for himself in Huntington Beach. At the time petitioner was employed to work in Huntington Beach, he had no specific agreement with Douglas Aircraft that his position would terminate at a specified time. Among petitioner's reasons for renting an apartment in Huntington Beach while maintaining his house in Rialto were: (1) His wife did not want to move away from Rialto. (2) He had recently built the house his family was living in in Rialto (though he had been a Rialto resident for many years) and he preferred not *5 to move again. (3) He did not want to place his children in a new school, as they were about to graduate from high school. (4) He had some real estate investments in Redlands, which is near Rialto, and wanted to watch over these investments. Petitioner incurred expenses from July 1966 to June 1967 for travel from Rialto to Huntington Beach and return, for meals, and for lodging in Huntington Beach while he was employed by Douglas Aircraft. Petitioner claimed a total of $2,840 as expenses for travel "away from home" on his 1966 income tax return. This total consisted of the following items: Meals and lodging
$2,279
Utilities
408
Auto expense
147
Moving expense 6
Total
$2,840
Petitioner resigned in June 1967 from Douglas Aircraft after having been offered a new job by Douglas which involved extensive travel. Petitioner did not want to travel. The notice of termination of employment issued by Douglas Aircraft stated: "terminated for personal reasons: transportation problem." Petitioner claimed medical deductions in the amount of $132 in his 1966 tax return, which amount was based on the amount of adjusted gross income computed by deducting the expenditures *6 in question from petitioner's gross income. Opinion We are presented with the question of whether petitioner is entitled to deduct under section 162(a) (2) as traveling expenses while away from home any of the expenditures incurred by him while working for Douglas Aircraft in Long Beach and in Huntington Beach, California. Section 162 (a)(2) provides: SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - * * * (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * * The Supreme Court in Commissioner v. Flowers, 326 U.S. 465 (1946), set forth three conditions which must be satisfied before a travel expense deduction is allowable. These conditions require that the expense be a reasonable and necessary traveling expense; it must be incurred by a taxpayer while away from home; and the expense must be incurred in pursuit of a trade or business. *7 Respondent argues that petitioner's expenditures in Long Beach and Huntington Beach, California, were "personal, living, or family expenses," and as such are not 1505 deductible by reason of section 262. [3] Petitioner argues that these expenditures were incurred while he was away from home in pursuit of his trade or business, and are deductible as such under section 162(a)(2). Petitioner relies on an exception to the condition imposed by Commissioner v. Flowers, supra, that a deduction must be incurred in pursuit of a trade or business. This exception, in effect, permits a deduction to a taxpayer when he is on a "temporary" assignment away from home. See Peurifoy v. Commissioner, 358 U.S. 59 (1958); E. G. Leach, 12 T.C. 20 (1949), acq. 1949-1 C.B. 3; Harry F. Schurer, 3 T.C. 544 (1944). However, if a taxpayer, having a principal place of employment at one location, accepts work at another location which is not "temporary," but *8 is for an "indefinite" or "indeterminate" period, his presence at the second location is not regarded as "away from home." Commissioner v. Peurifoy, 254 F. 2d 483 (C.A. 4, 1957), reversing 27 T.C. 149 (1956), affd. per curiam 358 U.S. 59 (1958); Emil J. Michaels, 53 T.C. - (November 18, 1969). We have held consistently that "home" as used in section 162 means the vicinity of the taxpayer's principal place of employment, and does not signify the location of his personal residence, if such residence is located in a place different from his principal place of employment. See, e.g., Emil J. Michaels, supra; Ronald D. Kroll, 49 T.C. 557 (1968); Leo M. Venner, 39 T.C. 749 (1963); Mort L. Bixler, 5 B.T.A. 1181 (1927). Determination of whether petitioner's assignments at Long Beach and at Huntington Beach were "temporary," as opposed to "indefinite" or "indeterminate," is purely factual. Leo M. Verner, supra. An important consideration in this determination is whether the employment was such that its termination within a short period could be foreseen. Leo M. Verner, supra; Leo C. Cockrell, 38 T.C. 470 (1962), *9 affd. 321 F. 2d 504 (C.A. 8, 1963); Beatrice H. Albert, 13 T.C. 129 (1949). Petitioner contends that, although he had no specific agreement with Douglas Aircraft that his position in Long Beach would be terminated at a certain time, he intended to leave his job in Long Beach by June 1966. Douglas Aircraft was not informed of petitioner's intention. We are unable to find anything in the record to support petitioner's contention. There are, in fact, circumstances which militate against a finding of petitioner's alleged personal intent to leave his job in Long Beach and return to Rialto. Petitioner remained in his position with Douglas Aircraft at Long Beach until he was laid off in April 1966. Instead of remaining in Rialto, however, petitioner accepted an offer from another division of the same employer, Douglas Aircraft, to resume work in Huntington Beach. This second offer was accepted in July 1966, one month after the expiration of the deadline which petitioner allegedly set for himself to return to Rialto. As for the nature of petitioner's employment at Huntington Beach, petitioner was hired by Douglas Aircraft once again on a full-time basis, with *10 no agreement as to the possibility of termination within any specified time. The reason why petitioner resigned from his position at Huntington Beach was that he had been assigned by Douglas Aircraft to another position which required extensive travel. The notice of termination of employment issued by Douglas Aircraft stated: "terminated for personal reasons: transportation problem." The fact that Douglas Aircraft offered to reimburse petitioner for his moving expenses both from Rialto to Long Beach and from Rialto to Huntington Beach indicates that certainly Douglas Aircraft did not view petitioner's employment in either of the two cities as "temporary" in nature. In view of petitioner's testimony and the other evidence presented, we are persuaded, and we hold, that petitioner's employment in Long Beach and in Huntington Beach was not "temporary" but that these two cities were his "tax homes" during the periods in 1966 petitioner was employed there. [4]
The thrust of section 162(a)(2) is to mitigate the burden of the taxpayer who, *11 because of the demands of his business, must maintain two places of abode and thereby incur additional living expenses. Ronald D. Kroll, supra. If it is reasonable in a particular case to expect the taxpayer to 1506 maintain a residence near his business, as where the location of the employment is not "temporary" in nature, the living expenses he incurs there are nondeductible personal living expenses under section 262. From January until April 1966, petitioner's "home" as construed under section 162(a) (2) was Long Beach. Petitioner's "home" for purposes of section 162(a)(2) was Huntington Beach from July 1966 to June 1967. Therefore, the expenditures petitioner incurred while working in those two cities in 1966 were personal living expenses which are not deductible by reason of section 262. Since petitioner's expenditures in 1966. are not deductible, the amount of petitioners' adjusted gross income for 1966 is increased accordingly, and the medical expense deduction claimed by petitioners for 1966 must be reduced from $132 to $47, as determined by respondent. Decision will be entered for the respondent. 1 Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. Josephine H. Michaelson is a party to this proceeding solely by virtue of the filing of a joint return for 1966.↩
3. SEC. 262. PERSONAL, LIVING AND FAMILY EXPENSES. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.↩
4. We note that petitioner was not employed in Rialto nor anywhere else during the period he was working in Long Beach and in Huntington Beach.↩