T.C. Summary Opinion 2007-60


UNITED STATES TAX COURT


MANUEL AYALA, JR., AND CAROL A. AYALA, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 5395-06S.              Filed April 23, 2007.


Manuel Ayala, Jr., pro se.

<u>Derek W. Kaczmarek</u>, for respondent.


ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect when the petition was filed.[1]  Pursuant to section
7463(b), the decision to be entered is not reviewable by any

---

[1]  Unless otherwise indicated, all subsequent section
references are to the Internal Revenue Code in effect for the
taxable years in issue.

other court, and this opinion shall not be treated as precedent for any other case.

Manuel Ayala, Jr., and Carol A. Ayala (collectively, petitioners) received a notice of deficiency in which respondent determined: (1) Deficiencies in income taxes for 2002, 2003, and 2004 of $2,295, $4,050, and $4,459, respectively, and (2) accuracy-related penalties under section 6662(a) for negligence or intentional disregard of rules or regulations of $459, $810, and $891.80, respectively. The basis for the deficiency determination was the denial of deductions claimed by petitioners for travel expenses under section 162(a)(2). We are asked to decide whether petitioners may deduct those expenses. This requires that we decide whether petitioners were "away from home" when they incurred the expenses. If we sustain respondent's determination, we are also asked to decide whether petitioners are liable for the accuracy-related penalties.

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits.

Petitioners listed their mailing address on their petition as Las Vegas, Nevada. Mr. Ayala testified at trial that petitioners' permanent mailing address is Rocklin, California.

Mr. Ayala is employed by Sheehan Pipeline Construction Company (Sheehan) as a project safety coordinator, and he travels from one project to another, all over the country, ensuring compliance with health and safety regulations. When one project is completed, he is usually assigned a new project immediately. Projects can last anywhere from a few months to a couple of years.

During the years at issue, Mr. Ayala worked on several back-to-back projects. During this period, petitioners lived in a travel trailer, and they traveled together from one job site to the next. In their own words, they were "gypsies". Although Mr. Ayala was paid a per diem while working onsite, it did not completely cover the travel expenses that were actually incurred.

Petitioners bought their home on wheels, the travel trailer, in Nevada; they registered the vehicle there out of convenience. Because they moved frequently and had to receive their mail somewhere, petitioners used a mail service in Las Vegas that provided them with a mailing address. They obtained Nevada licenses, and later, when they purchased a truck, they registered the truck in Nevada.

As petitioners do not own a residence for their own use aside from the travel trailer, they consider Mr. Ayala's ancestral home in Vallejo, California, to be their "real" home.

The ancestral home in Vallejo was purchased by Mr. Ayala's father in 1953, and it is both the home in which Mr. Ayala grew up and the home in which his disabled sister has resided for a number of years.  Mr. Ayala and his siblings own the home.

Petitioners have other ties to California.  They grew up in Vallejo, and their son was born there.  In addition, their daughter and grandchildren live in the Sacramento area.  When petitioners are not on the road for Sheehan, they visit California, setting up their trailer near Sacramento and commuting back and forth to Vallejo as needed to assist with the care of Mr. Ayala's disabled sister.[2]  However, petitioners do not file California State income tax returns or pay California State income tax unless Mr. Ayala has had California-source income from his employment with Sheehan.  In addition, petitioners do not vote in California.[3]

Petitioners financially assist with the support of Mr. Ayala's disabled sister.  Sometimes petitioners pay her water and trash collection bills, and sometimes they pay the property taxes on the home in Vallejo so that Mr. Ayala's sister might continue

---

[2]  During these periods, Mrs. Ayala usually stays in the trailer to care for petitioners' pets, and Mr. Ayala tries to stay in the house in Vallejo with his disabled sister.

[3]  Petitioners also do not vote in Nevada as they are not considered legal residents for voting purposes.

to live there without interruption of services or imposition of property-tax liens.

Petitioners and respondent primarily disagree on whether the house in Vallejo, California, is petitioners' "tax home" and consequently, whether petitioners' expenses incurred while working onsite for Sheehan are deductible under section 162(a)(2) as expenses incurred in pursuit of a trade or business while away from home.

## Discussion[4]

### A. Section 162(a)(2)

Generally, outlays for food and shelter are considered personal expenses and are not deductible. Sec. 262. However, section 162(a)(2) allows a deduction for traveling expenses, including amounts expended for meals and lodging, if the expenses are: (1) Ordinary and necessary, (2) incurred while "away from home", and (3) incurred in pursuit of a trade or business. See Bochner v. Commissioner, 67 T.C. 824, 827 (1977). Respondent contends that petitioners were not "away from home" when they incurred the expenses, and thus that petitioners do not satisfy

---

[4] Given the manner in which these issues were presented to the Court, we make our decision as to both the deficiencies and additions to tax without regard to the various burdens of proof under sec. 7491.

the second factor for deductibility of the expenses claimed on their returns for the years in issue.[5]

As a general rule, a taxpayer's principal place of employment is the taxpayer's "tax home". Kroll v. Commissioner, 49 T.C. 557, 561-562 (1968). An employee without a principal place of business may treat a permanent place of residence at which the employee incurs substantial continuing living expenses as his or her tax home. Weidekamp v. Commissioner, 29 T.C. 16, 21 (1957). Where "the taxpayer has neither a principal place of business nor a permanent residence, he has no tax home from which he can be away. His home is wherever he happens to be." Barone v. Commissioner, 85 T.C. 462, 465 (1985), affd. without published opinion 807 F.2d 177 (9th Cir. 1986).

Although the subjective intent of a taxpayer is to be considered in determining whether the taxpayer has a tax home, for purposes of section 162(a)(2), this Court and others have consistently focused more on objective criteria. Section 162(a)(2) is intended to mitigate the burden of a taxpayer who, because of the travel requirements of his or her trade or

---

[5] During the years in issue, only Mr. Ayala was employed by Sheehan, so only his travel expenses are potentially deductible as business expenses under sec. 162(a)(2). However, given the nature of the substantive issue presented by respondent's deficiency determination and the manner in which we decide that issue, we need not consider any allocation of expense between Mr. and Mrs. Ayala. Accordingly, for convenience, our discussion is generally cast in terms of petitioners' tax home rather than just Mr. Ayala's.

business, must maintain two places of abode and, therefore, incur additional living expenses. Brandl v. Commissioner, 513 F.2d 697, 699 (6th Cir. 1975), affg. T.C. Memo. 1974-160; Kroll v. Commissioner, supra at 562. In other words, section 162(a)(2) is intended to provide relief to a taxpayer who incurs "substantial continuing expenses" of a home that are duplicated by business travel. See James v. United States, 308 F.2d 204, 207-208 (9th Cir. 1962); Kroll v. Commissioner, supra at 562. When a taxpayer continuously travels for work and does not have substantial, duplicative, continuous living expenses for a permanent home maintained for some business reason, the taxpayer has no tax home. Henderson v. Commissioner, 143 F.3d 497, 499 (9th Cir. 1998), affg. T.C. Memo. 1995-559; James v. United States, supra.

Most significantly in this case, petitioners bore no expenses in maintaining a home in addition to their travel trailer. Notwithstanding their very real ties to California, petitioners bore no duplicative living expenses. They did not make mortgage payments, pay regular utilities costs, or regularly pay for running a household other than the one in which they resided: The travel trailer. In other words, expenses incurred in respect of the ancestral home in Vallejo were incurred for the benefit of Mr. Ayala's sister and not because of the exigencies of Mr. Ayala's business travel. Make no mistake: Petitioners' financial support of Mr. Ayala's sister was extremely laudable.

However, those financial outlays were not of the type considered to be costs of maintaining a home such that the expenses related to petitioners' life on the road for Sheehan would be redundant. Petitioners were not "away from home" within the intent and meaning of section 162(a)(2) for the taxable years at issue because they had no "home" to be away from. Barone v. Commissioner, supra at 465; Wirth v. Commissioner, 61 T.C. 855, 858-859 (1974). In short, petitioners' tax home was wherever they happened to be. See Brandl v. Commissioner, supra. Accordingly, petitioners are not entitled to deduct the expenses claimed on their returns for the years at issue.

## B.  Section 6662(a)

Section 6662(a) imposes a penalty equal to 20 percent of the amount of any underpayment attributable to negligence or disregard of the rules or regulations. Sec. 6662(b)(1). "'[N]egligence' includes any failure to make a reasonable attempt to comply with the [Internal Revenue Code], and the term 'disregard' includes any careless, reckless, or intentional disregard." Sec. 6662(c).

In view of the factual uncertainties presented in this case, as well as Mr. Ayala's forthright and very credible testimony, we are convinced that petitioners operated in good faith and that the reasonable cause and good faith provisions of section

6664(c)(1) are applicable here.  We therefore decide in favor of petitioners on this issue.

C.  <u>Conclusion</u>

In closing, we think it appropriate to observe that we found petitioners to be very conscientious taxpayers who take their tax responsibilities seriously.  Mr. Ayala's testimony was straightforward and credible.  The Tax Court, however, is a court of limited jurisdiction and lacks general equitable powers. <u>Commissioner v. McCoy</u>, 484 U.S. 3, 7 (1987); <u>Hays Corp. v. Commissioner</u>, 40 T.C. 436, 442-443 (1963), affd. 331 F.2d 422 (7th Cir. 1964).  Consequently, our jurisdiction to grant equitable relief is limited.  <u>Woods v. Commissioner</u>, 92 T.C. 776, 784-787 (1989); <u>Estate of Rosenberg v. Commissioner</u>, 73 T.C. 1014, 1017-1018 (1980).  Therefore, we must find that petitioners' ancestral home in Vallejo was not their tax home for Federal tax purposes during the years in issue.  Rather, their tax home was wherever petitioners happened to be, and consequently, they had no home from which to be away for purposes of claiming deductions for travel expenses under section 162(a)(2).

To reflect our disposition of the disputed issues,

Decision will be entered

for respondent as to the

deficiencies in income taxes and

for petitioners as to the accuracy-

related penalties.